# UNITED STATES BANKRUPTCY COURT
## FOR THE EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION – DETROIT

In the Matter of:

Patrick William McLeod
Josephine Ann McLeod,

      Debtors.

_____/

Bankruptcy Case No. 12-66747
Honorable Marci B McIvor
Chapter 11


## PLAN OF REORGANIZATION OF PATRICK WILLIAM MCLEOD AND JOSEPHINE ANN MCLEOD UNDER CHAPTER 11 OF THE BANRKUTPCY CODE


Prepared By:

STEVENSON & BULLOCK, P.L.C.
Ernest M. Hassan, III (P67815)
Attorneys for Patrick and Josephine McLeod
26100 American Drive, Suite 500
Southfield, MI 48034
Telephone: (248) 354-7906
Facsimile: (248) 354-7907


Dated: June 10, 2013

## PLAN OF REORGANIZATION

### INTRODUCTION

Patrick William McLeod and Josephine Ann Mcleod ("Debtors") and in accordance with the United States Bankruptcy Code, hereby proposes in good faith the following Plan of Reorganization (the "Plan") for the resolution of outstanding Creditor Claims and Equity Interests (as such term is defined below). The Debtors are the proponents of this Plan within the meaning of Section 1129 of the Bankruptcy Code (as such term is defined below). Reference is made to the Disclosure Statement (as such term is defined below) distributed contemporaneously herewith, for a discussion of Mr. and Mrs. McLeod's history, properties, results of operations, historical financial information, projections and risk factors, and for a summary and analysis of the Plan and certain related matters. All holders of Claims who are entitled to vote on the Plan are encouraged to read the Plan and the Disclosure Statement in their entirety before voting to accept or reject the Plan.

### ARTICLE I

### DEFINITIONS, RULES OF INTERPRETATION, COMPUTATION OF TIME AND GOVERNING LAW

As used in this Plan, the following terms shall have the meanings specified below:

1.1 **SCOPE OF DEFINITIONS; RULES OF CONSTRUCTION.** For the purposes of the Plan, except as expressly provided or unless the context otherwise requires, all capitalized terms not otherwise assigned shall have the meaning ascribed to them in this Article I of the Plan. Any term used in the Plan that is not defined in this Article I of the Plan, but is defined in the Bankruptcy Code or the Bankruptcy Rules (as such term is defined below) shall have the meaning ascribed to such terms in the Bankruptcy Code or the Bankruptcy Rules as the case shall be. Whenever the context requires, such terms shall include the plural as well as the singular number, the masculine gender shall include the feminine and the feminine gender shall include masculine.

1.2 **DEFINITIONS.**

1.2.1 Administrative Claim: shall mean a Claim for Payment of Administrative expense of a kind specified in Section 503(b) or 507(b) of the Bankruptcy Code and entitled to priority pursuant to Section 507(a)(2) or 507(b) of the Bankruptcy Code, including, but not limited to, (a) the actual necessary costs and expenses, incurred after the Petition Date, of preserving the Estate and operating the business of the Debtor, including wages, salaries or commissions for services rendered after the Petition Date, (b) professional fees, (c) all fees and charges assessed against the Estate under 28 U.S.C. § 1930 and (d) all allowed Claims that are entitled to be treated as administrative claims pursuant to a final Order under Section 546(c)(2) of the Bankruptcy Code.

1.2.2 Administrative Creditor: shall mean any Creditor holding an Allowed Administrative Claim.

2

1.2.3 <u>Allowed:</u> shall mean when used in reference to a Claim or Interest, within a particular Class, an allowed Claim or Allowed Interest of the type described in such Class.

1.2.4 <u>Allowed Claim:</u> shall mean

    A. A Proof of Claim or Interest that was:

        1. Timely filed;

        2. Deemed filed pursuant to Section 1111(a) of the Code; or

        3. Filed late with leave of the Bankruptcy Court after notice and an opportunity for hearing given to the Debtor and counsel for the Debtor; <u>and</u>

    B. 1. The Claim is not a Contested Claim or a Contested Interest,

        <u>Or</u>

        2. The Claim is allowed (and only to the extent allowed) by a Final Order of the Bankruptcy Court.

1.2.5 <u>Allowed Interest:</u> shall mean an Interest, (a) in respect of which a proof of claim has been filed with the Court within the period of limitation fixed by F.R. Bankr. P. 3001-3005, or (b) scheduled in the list of creditors prepared and filed with the Court pursuant to F.R. Bankr. P. 1007, and not listed as disputed, contingent or un-liquidated as to amount, in either case as to which no objection to the allowance thereof has been raised with any applicable period of limitation, or as to which any such objection has been determined by an order or judgment which is no longer subject to appeal or certiorari proceeding and as to which no appeal or certiorari proceeding is pending.

1.2.6 <u>Allowed Secured Claim or Allowed Secured Interest:</u> shall mean an Allowed Claim secured by a lien, security interest or other charge against or interest in property in which either Debtor has an interest, or which is subject to set off under 11 U.S.C. § 553, to the extent of the value (determined in accordance with 11 U.S.C. § 506(a)) of the interest of the holder of such Allowed Claim in the Debtor's interest in such property or to the extent of the amount subject to such set off, as the case may be.

1.2.7 <u>Allowed Unsecured Claim or Allowed General Unsecured Claims or Allowed Unsecured Interest:</u> shall mean the Allowed Claim of a creditor for goods or services to Debtor before Debtor filed the Chapter 11 cases, which is not secured by lien, security interest or other charge against property of the estate, or subject to set off pursuant to 11 U.S.C. §553. This definition may include under-secured claims. This definition shall not include tax claims given priority status and treatment. This definition shall not include any claim for which the debt was scheduled in the list of creditors prepared and filed with the Court pursuant to F.R. Bankr. P. 1007 and listed as DISPUTED or CONTINGENT and the creditor did not file a proof of claim within the period of limitation fixed by F.R. Bankr. P. 3001-3005.

3

1.2.8 <u>Avoidance Actions</u>: shall mean all claims granted to the Debtor in Possession or to the Estates under Chapter 5 of the Bankruptcy Code.

1.2.9 <u>Ballot</u>: shall mean the document (as appropriate for each class) distributed to all Creditors in connection with the solicitation of votes for or against the Plan.

1.2.10 <u>Bankruptcy Code</u>: shall mean the Bankruptcy Reform Act of 1978, as codified in Title 11 of the United States Code (11 U.S.C. §§101, et seq.), as in effect as of the Petition Date, or thereafter amended to the extend such amendments are applicable to the Chapter 11 Case.

1.2.11 <u>Bankruptcy Court</u> or <u>Court</u>: shall mean the United States Bankruptcy Court for the Eastern District of Michigan, Southern Division, or such other court as may have jurisdiction over the Chapter 11 Cases.

1.2.12 <u>Bankruptcy Rules or Rules</u>: shall mean the Federal Rules of Bankruptcy Procedure, as promulgated by the United States Supreme Court that became effective on August 1, 1991 and any amendments thereto. To the extent applicable, Bankruptcy Rules also refers to the Local Rules of the United States District Court for the Eastern District of Michigan, as amended, and the Local Bankruptcy Rules for the Eastern District of Michigan.

1.2.13 <u>Bar Date(s)</u>: shall mean the date(s), if any, designated by the Bankruptcy Court as the last date (s) for filing Proofs of Claim or Interest against the Debtor, or otherwise asserting any Claim against the Debtor, or, in the absence of such designation, as shall be applicable under the Bankruptcy Rules.

1.2.14 <u>Business Day</u>: shall mean any day, other than a Saturday, Sunday or "Legal Holiday," as that term is defined in Bankruptcy Rule 9006(a).

1.2.15 <u>Cash</u>: shall mean legal tender of the United States or equivalence thereof.

1.2.16 <u>Causes of Action</u>: shall mean any and all actions, proceedings, causes of action, suits, accounts, demands, controversies, agreements, promises, rights to legal remedies, rights to equitable remedies, rights to payment, and claims, whether known, unknown, reduced to judgment, not reduced to judgment, liquidated, unliquidated, fixed, contingent, non-contingent, matured, unmatured, disputed, undisputed, secured, or unsecured, and whether asserted or assertable directly or derivatively in law, equity, or otherwise, including Avoidance Actions, unless otherwise waived or released by the Debtor or the Reorganized Debtor to the extent such Cause of Action is a Cause of Action held by the Debtor or the Reorganized Debtor.

1.2.17 <u>Chapter 11 Case</u> or <u>Case</u>: shall mean the case currently pending before the Bankruptcy Court titled Patrick William McLeod and Josephine Ann Mcleod (Bankruptcy Case No. 12-66747).

4

1.2.18 <u>Claim:</u> shall have the meaning as set forth in 11 U.S.C. § 101 and include any right to payment, or right to an equitable remedy for breach of performance if such breach gives rise to a right to payment, against Debtor in existence on or as of the Petition Date, whether or not such right to payment or right to an equitable remedy is reduced to judgment, liquidated, unliquidated, fixed contingent, matured, unmatured, disputed, undisputed, legal, secured or unsecured.

1.2.19 <u>Class:</u> shall mean any class into which Allowed Claims are classified.

1.2.20 <u>Collateral:</u> shall mean the assets of a Debtor's Estate that secure a Secured Claim.

1.2.21 <u>Conditions Precedent:</u> shall mean those conditions to the Effective Date of the Plan set for in the Plan.

1.2.22 <u>Confirmation Date:</u> shall mean the date upon which the Order of Confirmation is entered by the Court.

1.2.23 <u>Confirmation Hearing:</u> shall mean the hearing conducted by the Bankruptcy Court to consider the confirmation of the Plan filed by Debtor.

1.2.24 <u>Confirmation Order or Order of Confirmation:</u> shall mean the order confirming this Plan by the Bankruptcy Court pursuant to 11 U.S.C. § 1129 of the Code.

1.2.25 <u>Contested:</u> shall mean when used in reference to a Claim of Interest in this Plan, any Claim or Interest as to which Debtor or any other party in interest has interposed an objection or commenced an adversary proceeding in accordance with the Bankruptcy Code, Bankruptcy rules and this Plan, which objection has not been determined by Final Order.

1.2.26 <u>Court:</u> shall mean the United States Bankruptcy Court for the State, in which the Debtor's Chapter 11 case, pursuant to which the Plan is proposed, is pending, and any court having competent jurisdiction to hear appeals or certiorari proceedings relating thereto.

1.2.27 <u>Cure:</u> shall mean the payment or other honor of all obligations required to be paid or honored in connection with assumption of any executor contract or unexpired lease pursuant to section 365 of the Bankruptcy Code, including, to the extent such obligations are enforceable under the Bankruptcy Code and applicable non-bankruptcy law: (a) the cure of any non-monetary defaults to the extent required, if at all, pursuant to section 365 of the Bankruptcy code, and (b) with respect to monetary defaults, the distribution within a reasonable period of time following the Effective Date of Cash, or such other property as may be agreed upon by the parties or ordered by the Bankruptcy Court, with respect to the assumption (or assumption and assignment) of an executor contract or unexpired lease, pursuant to section 365(b) of the

5

Bankruptcy Code, in an amount equal to all unpaid monetary obligations or such lesser amount as any be agreed upon by the parties, under such executory contract or unexpired lease.

1.2.28 Creditor: shall mean any person, entity or its assignee that holds a Claim against Debtor for debts, liabilities, or demand of whatever kind or character which arose prior to the Petition Date.

1.2.29 Debtors: shall mean Patrick William McLeod and Josephine Ann McLeod.

1.2.30 Debtor In Possession: shall mean Patrick William McLeod and Josephine Ann McLeod.

1.2.31 Deficiency Claim: shall mean any claim asserted by a Secured Claim Holder that is not an Allowed Secured Claim.

1.2.32 Disallowed Claim: shall mean (a) a Claim, or any portion thereof, that has been disallowed by a Final Order or a settlement, (b) a Claim or any portion thereof that is Scheduled at zero or as contingent, disputed, or unliquidated and as to which a Bar Date has been established but no Proof of claim has been timely filed or deemed timely Filed with the Bankruptcy Court pursuant to either the Bankruptcy Code or any Final Order of the Bankruptcy Court or otherwise deemed timely Filed under applicable law, or (c) a claim or any portion thereof that is not Scheduled and as to which a Bar Date has been established but no Proof of Claim has been timely filed or deemed timely Filed with the Bankruptcy Court pursuant to either the Bankruptcy Code or any final Order of the Bankruptcy Court or otherwise deemed timely filed under applicable law.

1.2.33 Disclosure Statement: shall mean the written Disclosure Statement that relates to the Plan, attached hereto, as amended, supplemented or modified from time to time, and that was prepared and distributed in accordance with Section 1125 of the Bankruptcy Code and applicable Bankruptcy Rules.

1.2.34 Disputed: shall mean with respect to any Claim on the Claims Register that is not yet Allowed.

1.2.35 Disputed Claim or Disputed Interest:  shall mean a Claim or any portion thereof, or an Interest or any portion thereof, that is neither an allowed Claim nor a disallowed claim, nor an Allowed Interest nor a Disallowed Interest, as the case may be.

1.2.36 Effective Date: shall be (i) that date upon which the Order entered by the Court confirming the Plan in accordance with the provisions of Chapter 11 of the Code becomes final and non-appealable, or in the event of appeal, such date as the Court may set pursuant to a motion for stay of proceedings, which Debtor shall be required to file and prosecute and (ii) the occurrence or waiver by the Debtor of all Conditions Precedent.

1.2.37 Estate: shall mean the Estate of a Debtor in the Chapter 11 Case, or created pursuant to Section 541 of the Bankruptcy Code.

6

1.2.38 <u>Exculpated Claim:</u> shall mean any Claim related to any act or omission in connection with, relating to, or arising out of the Debtor in the Chapter 11 Case, the filing of the Disclosure Statement or Plan or any contract, instrument, release, or other agreement or document created or entered into in connection with the Disclosure Statement or Plan, the filing of the Chapter 11 Cases, the pursuit of confirmation, the pursuit of consummation, the administration and implementation of the Plan, or the distribution of property under the Plan or any other agreement.

1.2.39 <u>Exhibit:</u> shall mean any document identified as an "exhibit" in this Plan, as modified, amended, or supplemented.

1.2.40 <u>Final Decree:</u> shall mean the decree contemplated under Bankruptcy Rule 3022.

1.2.41 <u>Final Order:</u> shall mean an order of the Bankruptcy Court as to which (i) the time for appeal has expired and no appeal has been timely taken, (ii) any timely appeal has been finally determined or dismissed and the time for any successive appeal has expired and no successive appeal has been timely taken or, (iii) in the discretion of the Reorganized Debtors, an appeal has been timely made but such order has not been stayed within ten (10) days after the filing of such appeal.

1.2.42 <u>GAAP:</u> shall mean generally accepted accounting principles.

1.2.43 <u>Group:</u> shall mean one or more similarly situated Creditors who hold or may allege Claims against the Debtor whose Claims are not subject to classification pursuant to Section 1123(a)(1) of the Bankruptcy Code.

1.2.44 <u>Holder:</u> shall mean a Person holding a Claim, Interest, or Lien, as applicable.

1.2.45 <u>Impaired:</u> shall mean a Claim treated under this Plan, unless the Plan:

(a) leaves unaltered the legal, equitable, and contractual rights to which such Claim or Interest entitles the holder of such Claim or Interest; or

(b) notwithstanding any contractual provision or applicable law that entitles the holder of such Claim or Interest to demand or receive accelerated payment of such Claim or Interest after the occurrence of a default—

(1) cures any such default (other than defaults relating to (i) any penalty interest rate or provision arising from a non-monetary default by the Debtor; (ii) the solvency or financial condition of the Debtor or (iii) the commencement of this Case) that occurred before or after the commencement of the Case;

7

(2)    reinstates the maturity of such Claim or Interest as such maturity existed before such default;

(3)    compensates the holder of such Claim or Interest for any damages incurred as a result of any reasonable reliance on such contractual provision or such applicable law; and

(4)    does not otherwise alter the legal, equitable or contractual rights to which such Claim or Interest entitles its holder.

1.2.46  Insider:  shall mean a current or former director, shareholder, officer, partner, person in control, relative of a director, officer, partner or person in control of the Debtor or a corporation or entity in which an Insider (as defined herein) of Debtor is an Insider.

1.2.47  Insider Secured Claims:  shall mean any claim held by an Insider to the extent such claim is a Secured Claim.

1.2.48  Lien:  shall mean a charge against, or an interest in property to secure payment of a debt or performance of an obligation.

1.2.49  Person:  shall have the meaning given to it under section 101(41) of the Bankruptcy Code.

1.2.50  Petition Date:  shall mean December 10, 2012, the date upon which the Debtor voluntarily filed for relief pursuant to Chapter 11 of the Bankruptcy Code.

1.2.51  Plan:  shall mean this Chapter 11 Plan of Reorganization in its present form or as may hereafter be amended, modified, or supplemented in accordance with the terms hereof or in accordance with the Code.

1.2.52  Priority Claim:  shall mean a claim under or entitled to priority under any of the following sections of the Bankruptcy Code; §§ 507(a)(1), 507(a)(3), 507(a)(4), 507(a)(5), 507(a)(6), 507(a)(7) and 507(a)(8) of the Bankruptcy Code.

1.2.53  Priority Creditor:  shall mean any Creditor holding a Priority under Section 507(a)(8) of the Bankruptcy Code.

1.2.54  Priority Tax Claim:  shall mean a Claim under or entitled to priority under Section 507(a)(8) of the Bankruptcy Code.

1.2.55  Professional:  means any professional employed in the Chapter 11 Case pursuant to Sections 327 or 1103 of the Bankruptcy Code seeking compensation or

8

reimbursement of expenses in connection with the Chapter 11 Case pursuant to Section 503(b)(4) of the Bankruptcy Code.

1.2.56 <u>Professional Fees:</u> means the fees and reimbursement for disbursements and expenses owed to Professionals.

1.2.57 <u>Proof of Claim:</u> means a Claim properly filed by a Holder of a Claim before the Bar Date.

1.2.58 <u>Pro Rata:</u> shall mean the proportion that the face amount of a Claim in a particular Class bears to the aggregate face amount of all Claims (including disputed or Contested Claims) in such Class unless the Plan expressly provides otherwise.

1.2.59 <u>Reorganized Debtor:</u> shall mean the Debtor after the Effective Date. Furthermore, to the extent the Debtor is referenced in a post-confirmation capacity, Debtor shall have the same meaning as the Reorganized Debtor.

1.2.60 <u>Rules:</u> shall mean the Bankruptcy Rules and the local Bankruptcy Rules as adopted by the Court.

1.2.61 <u>Schedules:</u> shall mean the schedules of assets and liabilities, the list of holders of Interests and the statement of financial affairs filed by the Debtor under Section 521 of the Bankruptcy Code and Bankruptcy Rule 1017 as such schedules and statements have been, or maybe supplemented or amended through the Confirmation Date.

1.2.62 <u>Secured Claim:</u> shall mean a Claim secured by a Lien on property in which an Estate has an interest but only to the extent of the value of the Creditor's interest in the Estate's interest in the property as of the Petition Date and only if such Secured Claim is Allowed.

1.2.63 <u>Unsecured Claim:</u> shall mean a Claim that is not a Secured Claim and is not an Administrative Claim or a Priority Claim.

1.2.64 <u>Unsecured Creditor:</u> shall mean any Creditor that holds an Unsecured Claim.

1.2.65 <u>Voting Deadline:</u> shall mean the date set by the Bankruptcy Court for the submission of Ballots as set forth in the Order of the Bankruptcy Court granting preliminary approval to the Disclosure Statement.

1.3     **RULES OF INTERPRETATION** For the purpose of the Plan;

9

1.3.1  Any reference in the Plan to a contract, instrument, release, indenture, or other agreement or document being in a particular form or on particular terms and conditions means that such document shall be substantially on such terms and conditions.

1.3.2 Any reference in the Plan to an existing document or Exhibit filed or to be filed means such document or Exhibit as it may have been or may be amended, modified or supplemented. Except as otherwise ordered by the Bankruptcy Court, all Exhibits, as amended, modified or supplemented, shall be incorporated by reference into this Plan for all purposes.

1.3.3  The words "herein" and "hereto" refer to the Plan in its entirety rather than to a particular portion of the Plan unless expressly stated otherwise.

1.3.4 Captions and headings to Articles and Sections are inserted for convenience of reference only and are not intended to be a part of or effect the interpretation of the Plan.

1.3.5 The rules of construction set forth in Section 102 of the Bankruptcy Code and in the Bankruptcy Rules shall apply.

1.3.6 The Disclosure Statement may be used as an aid for interpretation of this Plan to the extent that any provision of this Plan is determined to be vague or ambiguous. However, to the extent any statement in the Disclosure Statement conflicts with any provision of this Plan, this Plan controls.

1.4     **COMPUTATION OF TIME** In computing any period of time prescribed or allowed by the Plan, the provisions of Bankruptcy rule 9006(a) shall govern.

1.5     **GOVERNING LAW** Unless a rule of law or procedure is supplied by federal law (including the Bankruptcy Code and Bankruptcy Rules), the laws of the State of Michigan shall govern the construction and implementation of the Plan and any agreements, documents and instruments executed in connections with the Plan.

1.6     **EXHIBITS** All Exhibits are incorporated into and are a part of this Plan and Disclosure Statement as if set forth in full herein and, to the extend not annexed hereto, such Exhibits shall be filed with the Bankruptcy Court. Upon its filing, the Exhibit may be inspected in the office of the clerk of the Bankruptcy Court or its designee during normal business hours or at the Bankruptcy court website for a fee at https://ecf.mieb.uscourts.gov. The Exhibits may also be requested in writing form the Debtor's counsel. All Exhibits may be revised prior to the Confirmation Date by the filing of the revised exhibits with the Bankruptcy Court, so long as the revised Exhibits are substantially in conformance with the terms of this Plan. The Exhibits are an integral part of the Plan, and entry of the Confirmation Order by the Bankruptcy Court shall constitute an approval of the Exhibits.

1.7     **ESTIMATES OF CLAIMS** Unless expressly stated otherwise, nothing herein shall be deemed to be an admission by the Debtor or to otherwise prejudice the Debtor in any claims objection or Cause of Action. All estimates of Causes of Action and Claims amounts listed in this Plan and Exhibits are current estimates only. All Claims amounts and Classifications remain subject to the Claims objection process as set forth in this Plan.

## ARTICLE II

## TREATMENT OF CLAIMANTS NOT SUBJECT TO CLASSIFICATION

Administrative Creditors and Priority Tax Creditors shall be paid as follows:

2.1     **ADMINISTRATIVE CLAIMS** The Administrative Claims shall consist of all Allowed Administrative Claims, including any taxes that qualify as Administrative Claims, quarterly fees for the United States Trustee, Professional Fees (including the fees owed to the Debtor's attorney and other Professionals), and all other expenses that qualify as an Administrative Claim incurred during the pendency of this Case that have not been paid before the Effective Date in the ordinary course of the Debtor's business or otherwise paid pursuant to a Court Order. The Debtor anticipates making regular payments on all Untied States Trustee fees and operating expenses during the pendency of the chapter 11 case and does not anticipate that any such fees and expenses will be materially past due as of the Effective Date. The Debtor has estimated the fees and expenses of Professionals and the United States Trustee that will be due until the Chapter 11 Case has been converted, dismissed or closed by the Court, pursuant to 28 U.S.C. § 1930(a)(6).

| Administrative Creditor | Estimated Claim Amount |
|---|---|
| United States Trustee Office | $1,950.00 |
| Stevenson & Bullock, P.L.C. | $30,000.00 |

These amounts are estimates only and not intended to bind any Professionals or United States Trustee.

2.1.1 Claims included in this group shall retain their priority notwithstanding the confirmation of this plan including, but not limited to: (i) the occurrence of the Effective Date and (ii) the filing by the Reorganized Debtor of any subsequent proceeding under any chapter of the Bankruptcy Code. The reorganized Debtor shall remain responsible for every claim in this group.

2.1.2 Each claimant in this group shall be paid the full amount of its claim on such date as may be mutually agreed upon between Debtor or the Reorganized Debtor and the particular claimant, or, if no such date is agreed upon, the latest of (i) the Effective Date, (ii) the date by which payment would be due in the ordinary course of business between the Debtor and such Administrative Creditor, (iii) thirty days after a motion or application for allowance of the Administrative Claim is filed or (iv) if necessary, or if the Claim is disputed, the date upon which the Bankruptcy Court enters its Final Order allowing such Administrative Claim.

2.1.3 The following Administrative Claims are anticipated to be owed:

11

(i) Stevenson & Bullock, PLC – Stevenson & Bullock, PLC is entitled, subject to Court approval, to a priority claim pursuant to 11 U.S.C. § 503(b) for fees and expenses incurred as counsel to the Debtor. It is anticipated that this priority claim will be $30,000.00. Stevenson & Bullock, PLC is holding a retainer of $9,515.00.

(ii) Office of the United States Trustee. The Debtor shall pay to the United States Trustee the appropriate sum required pursuant to 28 U.S.C. § 1930(a)(6) for all quarters completed for which payment is currently due within 10 days after the Effective Date and shall continue to remit quarterly fee payments based on all disbursements until the case is closed by order of the court. The Debtor shall continue to remit to the Office of the United States Trustee all appropriate post confirmation monthly reports for the relevant time periods, and continue to remit in full all quarterly fee payments owed and/or due based on all disbursements, until this Bankruptcy Case is closed by Court Order, converted or dismissed. After this case is closed, to the extent any monthly reports have not been timely provided or fees not paid in full, this case may be re-opened by the office of the United States Trustee to file such Motions or take such action as appropriate to be provided with such reports and paid any fees owed or due.

2.2     **PRIORITY TAX CLAIMS** The Priority Tax Claims shall consist of the allowed Claims that are entitled to priority under Section 507(a)(8) of the Bankruptcy Code. These claims include the following Priority Tax Claims:

2.2.1 There are no allowed priority claims.

2.3 **DETERMINATION OF PRIORITY TAX CLAIMS** The Debtor or Reorganized Debtor shall have the right to challenge any Priority Claim through the claims objection process set forth in this Plan, which challenges may include, but need not be limited to, a challenge to any penalty portion of such claim, the amount and the value of the property which forms the basis for any assessment of taxes and the computation of the tax. The right to challenge these Claims shall include, without limitation, an objection to the assessment of the Debtor's real or personal property that may or may not have been made by the respective taxing authority.


# ARTICLE III

## SPECIFICATION OF TREATMENT OF CLASSES OF CLAIMS OR INTERESTS NOT IMPAIRED UNDER THE PLAN AND THOSE IMPAIRED UNDE THE PLAN

All holders of claims against the Debtor and Estate, other than the claims treated in Article II, are divided into the classes set forth in this Article III for all purposes, including voting on, confirmation of and distribution under the Plan. A claim or a portion of a claim will be placed into a class only to the extent that the claim qualifies within the description of such class. A claim will be entitled to the treatment accorded to a particular class only to the extent that such claim is an Allowed Claim. Any holder of a Deficiency Claim, if any, shall be deemed to have a General Unsecured Claim in Class IV in the amount of such Deficiency Claim.

The Plan divides Claims and Interest as follows:

3.1     **CLASS I**

       3.1.1 Class I shall include liens that are fully secured in property possessed by Debtors and that Debtors have continued to pay continuously prior to and since the commencement of this case, and shall continue to pay throughout the term of the Plan. These claims are current and not delinquent in any matter. Class I are not impaired. These claims are as follows:

       a.      American Servicing Co – first lien holder on personal residence – Continuing Claim of $2,220.00 per month.

       b.      Ally Financial – lien holder on 2010 Town & Country- Continuing Claim of $416.37 per month.

       c.      Ford Motor Credit – lien holder on 2009 Ford F150 – Continuing Claim of $590.03 per month.

       d.      Bank of America, N.A.– first lien holder of the rental property located at 6152 Singletree Lane, Acme, MI which is fully secured. The fair market value of the property in which it has a lien is $160,000.00. On April 15, 2013, Bank of America, N.A. filed a Proof of Claim claiming the amount owed on the date of filing was $141,769.91.(See Claim No. 12)There are no property tax liens on this property. Thus, Bank of America is fully secured. Debtor will continue to pay the regular mortgage contract amount of $1,208.88 per month.

       e.      The Bank of New York Mellon fka the Bank of New York, Successor Trustee to JP Morgan Chase Bank, N.A., as Trustee for the CSFB Mortgage Securities Corp., Home Equity Mortgage Pass Through Certificates, Series 2004-1("Mellon")- second lien holder on rental property located at 6152 Singletree Lane, Acme, MI ("Singletree Property") which is fully secured. The fair market value of the property in which it has a lien is $160,000.00. On April 3, 2013, Mellon filed a Proof of Claim claiming the amount owed on the date of filing was $13,223.68. (See Claim No. 10) Bank of America, N.A. is the first lien holder on the Singletree Property in the amount of $141,769.91. (See Claim No. 12) There are no property tax liens on this property. Thus, Mellon is fully secured. Debtor will continue to pay the regular mortgage contract amount of $136.66 per month.

       3.1.2 **This Class Shall Not be Impaired.**

3.2     **CLASS II**

       3.2.1 Class II shall consist of claims from State of Michigan Department of Treasury, auditing for Oakland County ("Treasury").

       3.2.2 The Treasury is currently auditing the Debtors regarding the claimed Principal Residence Exemption received by Debtors on the property located at 513 E University Dr, Rochester, MI for the years of 2010, 2011, 2012 and 2013. The Treasury's estimated allowed secured claim is $10,000.00. The Claim of the Treasury in the amount of $10,000.00 shall be paid in full within the 108 months of the Effective Date, beginning on the Effective Date, Payments shall be in equal monthly installments of $92.59 to the Treasury. If Treasury's claim varies from the estimated allowed claim the equal monthly installments shall be increased or decreased accordingly to allow the claim to be paid in full within 108 months.

3.2.3 The Treasury shall retain liens on all collateral securing the Class II indebtedness to the same extent and with the same priority as existed immediately before the Petition Date.

## 3.3 **CLASS III**

3.3.1 Voting Class III shall consist of claims that Creditors who are partially secured in the scheduled properties and partially unsecured. These claims shall be paid in equal monthly payments, with interest on the secured portion at 3%, during the course of the nine year plan. Debtors' shall receive a credit for any pre-confirmation adequate protection payments made in this case. These claims are impaired.

a. JPMorgan Chase Bank, National Association ("Chase") is a partially secured first lien holder of rental property located at 3324 Valley Rise Dr., Holly, MI 48442 ("Valley Rise Property"). The fair market value of the Valley Rise Property in which Chase has a first lien is $115,000.00. On April 15, 2013, Chase filed a Proof of Claim claiming the amount owed on the date of filing was $183,944.84. (See Claim No. 13) Thus, Chase's secured value (liquidation value) is $115,000.00. Their secured claim shall be paid the sum of $1,216.35 per month, which includes 3% interest, for 108 months. Chase shall receive an unsecured claim in that amount of the difference between the filed secured claim and the value of the real property as noted above.

b. Ocwen Loan Servicing, ("Ocwen") is a partially secured first lien holder of rental property located at 793 Walton, Pontiac, MI 48340 ("793 Walton"). The fair market value of the 793 Walton Property in which Ocwen has a first lien is $48,000.00. According the Debtor's Schedules amount owed on the date of filing was $129,030.00. Thus, Ocwen's secured value (liquidation value) is $48,000.00. Their secured claim shall be paid the sum of $507.69 per month, which includes 3% interest, for 108 months. Ocwen shall receive an unsecured claim in that amount of the difference between the filed secured claim and the value of the real property as noted above.

c. Bank of America, N.A. is a partially secured first lien holder of rental property located at 785 E Walton Blvd., Pontiac, MI 48340 ("785 E Walton"). The fair market value of the 785 E Walton in which Bank of America, N.A. has a first lien is $35,000.00. On April 15, 2013, Bank of America, N.A. filed a Proof of Claim claiming the amount owed on the date of filing was $84,106.38. (See Claim No. 11) Thus, Bank of America, N.A.'s secured value (liquidation value) is $35,000.00. Their secured claim shall be paid the sum of $370.19 per month, which includes 3% interest, for 108 months. Bank of America, N.A. shall receive an unsecured claim in that amount of the difference between the filed secured claim and the value of the real property as noted above.

d. Seterus, Inc. is a partially secured first lien holder of rental property located at 513 East University Drive, Unit 56, Rochester, MI 48307 ("513 East"). The fair

market value of the 513 East in which Seterus, Inc. has a first lien is $58,000.00. On February 19, 2013, Seterus, Inc. filed a Proof of Claim claiming the amount owed on the date of filing was $85,761.34. (See Claim No. 8) Thus, Seterus, Inc.'s secured value (liquidation value) is $58,000.00. Their secured claim shall be paid the sum of $613.46 per month, which includes 3% interest, for 108 months. Seterus, Inc shall receive an unsecured claim in that amount of the difference between the filed secured claim and the value of the real property as noted above.

e.     Provident Funding Associates, LP ("Provident") is a partially secured first lien holder of rental property located at 777 East Walton Boulevard, Pontiac, MI 48340. ("777 East"). The fair market value of 777 East in which Provident has a first lien is $30,000.00. On January 21, 2013, Provident filed a Proof of Claim claiming the amount owed on the date of filing was $135,811.55. (See Claim No. 5) Thus, Provident's secured value (liquidation value) is $30,000.00. Their secured claim shall be paid the sum of $317.31 per month, which includes 3% interest, for 108 months. Provident shall receive an unsecured claim in that amount of the difference between the filed secured claim and the value of the real property as noted above.

f.      Central Mortgage Company ("Central") is a partially secured first lien holder of rental property located at 767 East Walton Boulevard, Pontiac, MI 48340. ("767 East"). The fair market value of 767 East in which Provident has a first lien is $52,000.00. On February 6, 2013, Central filed a Proof of Claim claiming the amount owed on the date of filing was $170,098.88. (See Claim No. 7) Thus, Central's secured value (liquidation value) is $52,000.00. Their secured claim shall be paid the sum of $550.00 per month, which includes 3% interest, for 108 months. Central shall receive an unsecured claim in that amount of the difference between the filed secured claim and the value of the real property as noted above.


3.3.2 Creditor possessing a Class III Claim shall retain Liens on all Collateral securing the Class III Creditor's indebtedness to the same extent of the liquidation values described above.

3.3.3 **This Class Shall be Impaired.**

3.4     **CLASS IV**

3.4.1 Creditors in Voting Class IV are those creditors possessing allowed unsecured claims.

3.4.2 Class IV consists of Allowed Unsecured Claims against the Debtors. The total amount of scheduled Class IV Unsecured Claims is approximately $60,493.29 pursuant to Debtors' filed Schedule F. This number did not include the potential $647,595.36 in Allowed Unsecured Claims filed pursuant to Class III treatment of Creditors. The Reorganized Debtors may file an objection to any Proof of Claim or unfiled claim.

15

3.4.3 A creditor in this class shall receive a pro rata distribution incident to its allowed general unsecured claim based one payment by Debtors of $5,222.40 each year for nine (9) years. The payment shall be due on or before December 31, 2014 and the remaining payments due on December 31st of each year thereafter. Interest shall not accrue on the Allowed Unsecured Claims. Creditors possessing allowed unsecured claims in the case of Patrick William McLeod and Josephine Ann McLeod shall receive pro rata distributions accordingly. Further, the claim of Alliance Catholic Credit Union was stripped from the real property located at 280 Golfside Dr., Oxford, MI 48371.

Upon entry of a Chapter 11 Order Confirming Plan in bankruptcy case number 12-66747, Alliance Catholic Credit Union's mortgage ("Mortgage") dated June 4, 2007, covering the following described property ("Property") situated in the Township of Oxford, Oakland County, State of Michigan, and further described as follows:

> PARCEL ID NUMBER 04-21-401-045, WITH THE LEGAL DESCRIPTION OF LOT 45, BLUFFS OF WATERSTON, ACCORDING TO THE PLAT THEREOF RECORDED IN LIBER 273 ON PAGE(S) 21 THROUGH 27 OF OAKLAND COUNTY RECORDS.
> COMMONLY KNOWN AS 280 GOLFSIDE DR., OXFORD, MICHIGAN, 48371

recorded in the Oakland County Register of Deeds on June 15, 2007, Liber 32948 Pages 415 Oakland County Records, will be discharged.

   3.4.4 **This Class Shall be Impaired.**

3.5  **CLASS V**

   3.5.1 Voting Class V consist of the Debtors, Patrick William McLeod and Josephine Ann McLeod, who hold equity interests in the estate property. Patrick and Josephine Mcleod will retain their equity interest by making an additional capital contribution to the Bankruptcy Estate in the total aggregate amount of $2,000.00 to be paid pro rata to unsecured creditors.

   3.5.2 **This Class Shall be Impaired.**

3.6  **CLASS VI**

   3.6.1 Class VI shall include homeowners associations for real property that Debtors have continued to pay prior to and since the commencement of this case. Debtors shall continue to pay homeowners association dues throughout the term of the Plan. These claims are current and not delinquent in any matter. Class VI Claims are not impaired. These claims are as follows:

   a.  The Bluffs of Waterstone Association, Inc.– homeowners association for 280 Golfside Drive – holder of annual continuing claim of approximately $225.00 per year.

   b.  Waterstone Master Association – homeowners association for 280 Golfside Drive - holder of annual continuing claim of $150.00 per year.

   c.  Paint Creek Condo Association – homeowners association for 513 East University, - holder of continuing claim of $197.00 per month.

d.      Piper Realty Company- homeowners association for 3324 Valley Rise Drive –
holder of continuing claim of $21.00 per month.
e.      Singletree Condo Assn. – homeowners association for 6152 Singletree Lane –
holder of continuing claim of $322.00 per month.

3.6.2 **This Class Shall Not be Impaired**

## ARTICLE IV
## EXECUTION AND IMPLEMENTATION OF THE PLAN

4.1      **ASSUMPTION OF LIABILITY, FUNDING AND FINANCING**

4.1.1 The Reorganized Debtors shall be responsible for satisfying all of the
Allowed Claims asserted against the estate in accordance with the terms and provisions of the
Plan.

4.1.2    The Debtors reasonably believe that further income from wages and rental
payments will enable the reorganized Debtors to satisfy their obligations under the Plan. Other
sources or cash may be explored and utilized by the Reorganized Debtors to the extent that such
infusions are necessary to meet the obligations of the Plan or to facilitate continued operations,
which may include refinancing. The Debtors shall be entitled to enter into financing
arrangements and to execute financing documents after the Effective Date without providing
notice or obtaining Bankruptcy Court approval; however, the Debtors may in their sole
discretion, seek Bankruptcy Court approval after notice an opportunity for a hearing.

4.1.3    The Reorganized Debtors may pre-pay any Claim, other than claims held
by Insiders or Affiliates, at any time without penalty or liability for unmatured interest. The
Reorganized Debtors may negotiate discounts in exchange for pre-payments. Upon satisfaction
of all obligations by the Reorganized Debtors to any Claim Holder pursuant to the provisions of
Articles II and/or III of this Plan, the Reorganized Debtors shall have no further obligation to
such claim Holder under this Plan, and such Claim Holder shall have no further or continued
rights or standing under this Plan.

4.1.4    Upon satisfaction of all obligations to all Claim Holders pursuant to the
provisions of Articles II and/or III of this Plan, the Reorganized Debtors shall no longer be
bound by the provisions of this Plan and shall be entitled to conduct their business without
Bankruptcy Court supervision under applicable non-bankruptcy law. Nothing in this Section 4.1
shall be construed as waiving or limiting the Reorganized Debtors' rights and interests under this
Plan, to enforce those rights and interests through the Bankruptcy Court, to dispute claims, to
bring motions or pursue Causes of Action in the Bankruptcy Court, or to petition the Bankruptcy
Court for the redress of any grievances.

4.2 **CAUSES OF ACTION AND AVOIDANCE ACTIONS** Upon the Effective Date,
the Reorganized Debtors shall have standing to pursue any and all Causes of Action and
Avoidance Actions.  Debtors believe that the value of any Causes of Action and Avoidance
Actions are insignificant.  Potential Avoidance Actions may include avoidance of pre-petition
payments to Insiders within one (1) year of the Petition Date, avoidance of other pre-petition

17

payments within ninety (90) days of the Petition Date, avoidance or challenge to any Liens asserted against property of the Debtors or the Reorganized Debtors, avoidance of any unauthorized payment made after the Petition Date, and avoidance of any fraudulent conveyance that may have been made within six (6) years of the Petition Date. Other Causes of Action preserved by this Plan include all accounts receivable, collection actions, contract claims, and commercial tort claims held by the Debtors. Potential defendants include all Persons that transact business with the Debtors and any Person listed in the Debtors' statements of financial affairs (available at the Bankruptcy Court or upon request to Debtors' counsel) as having received a payment within ninety (90) days of the Petition Date. All Causes of Action, including Avoidance Actions, are specifically reserved, whether or not specifically listed in the Plan or Disclosure Statement. The Debtors and Reorganized Debtors shall have full discretion to pursue, litigate, settle and/or abandon any Cause of Action or Avoidance Action. Unless any cause of action against a Person is expressly waived, released, compromised or settled in the Plan or a Final Order, the Reorganized Debtors specifically reserve all causes of action for later adjudication, and, therefore, no preclusion doctrine, res judicata, estoppel (judicial, equitable or otherwise) or laches shall apply to any of the causes of action upon, after or as a consequence of the confirmation of the Plan, entry of the Confirmation Order, the Effective Date or consummation of the Plan. Whether or not any Cause of Action is pursued or abandoned, the Debtors and Reorganized Debtors reserve their rights to use any Cause of Action defensively, including for the purposes of asserting a setoff or recoupment, or to object to all or part of any Claim pursuant to section 502(d) of the Bankruptcy Code or otherwise.

4.3 **PROFESSIONAL FEES** All services performed or expenses incurred by any Professional on behalf of the Debtors or the Reorganized Debtors with respect to this Chapter 11 Case after the Effective Date, shall be Administrative Claims and shall not be subject to the prior review and approval of the Bankruptcy Court. Notwithstanding any provision of the Bankruptcy Code or Rules, including, without limitation, Bankruptcy Rule 2016, after the Effective Date, no Professional shall be required to disclose payments from a Debtors or a Reorganized Debtors to the Bankruptcy Court or the United States Trustee. All fees and expenses of the Debtors and the Reorganized Debtors arising after the Effective Date shall be billed directly to the Reorganized Debtors and the Bankruptcy Court shall only review that portion to which the Reorganized Debtors objects. The Reorganized Debtors shall pay the portion not objected to in accordance with the terms of the invoice.

4.4 **CHANGE OF ADDRESS** In order to ensure that it receives its distribution, each Creditor holding a Claim treated under Articles II or III must advise the Reorganized Debtors of any change in address. Absent any such notification, the Reorganized Debtor shall send payments to the address listed on the Matrix on file with the Bankruptcy Court or the address noted as the payment address on the Proof of Claim. If the payment is not negotiated within four (4) months after being mailed, it shall be void.

**ARTICLE V**

**EFFECT OF CONFIRMATION**

5.1 **CONDITIONS PRECEDENT TO THE EFFECTIVE DATE** Except as otherwise set forth in the Confirmation Order or as expressly waived by the Debtors in writing, the following conditions must be met before the occurrence of the Effective Date:

5.1.1 The Bankruptcy Court shall have approved by Final Order and Disclosure Statement with respect to this Plan in form and substance acceptable to the Debtors.

5.1.2 The Bankruptcy Court shall have entered a Confirmation Order without any material modifications of or additions to the terms, conditions and Debtors' liabilities as set forth in this Plan, and no request for revocation of the Confirmation Order under section 1144 of the Bankruptcy Code shall have been made, or, if made, shall remain pending.

5.1.3 There shall be no pending appeal of the Confirmation Order.

5.1.4 There shall be no pending motion to dismiss or convert the Debtors' case or to appoint a Chapter 11 trustee or examiner.

5.1.5 The Debtors have sufficient Cash, in the Debtors' reasonable discretion, to pay all Administrative Claims and Priority Claims required to be paid by this Plan as of the Effective Date.

5.2 **FAILURE OF A CONDITION PRECEDENT**

5.2.1 If the Conditions Precedent are neither met nor waived within one hundred and eighty (180) days after entry of the Confirmation Order, the Confirmation Order and this Plan shall be null and void, unless the Debtors file a motion before such date requesting that the Court extend the one hundred and eighty day period.

5.2.2 The Debtors may seek to withdraw this Plan at any time prior to the Effective Date by filing an appropriate motion with the Bankruptcy Court. If the Debtors withdraw this Plan, it shall be null and void for all purposes.

5.3 **DISCHARGE OF INDEBTEDNESS** Except as provided in this Plan, the occurrence of the Effective Date of this Plan shall, and does hereby act to discharge and release the Claims of all Creditors against the Debtors and the Reorganized Debtors, the same constituting a full, total and complete settlement with said Creditors and Interest Holders. Except as provided in this Plan, the occurrence of the Effective Date shall also act as a merger and relinquishment of any and all Claims that Creditors have, or may have, against the Debtors and the Reorganized Debtors as provided in the treatment of the Creditors in Articles II and III. The forgoing notwithstanding, this paragraph shall not affect the rights of any taxing authority against any other entity or Person who may be liable or responsible for the taxes of the Debtors or Reorganized Debtors.

5.4 **WAIVER OF CLAIMS** Except as to any taxing authority, on the Effective Date, confirmation shall also constitute a waiver by Creditors of any right that they may have (i) regarding the Exculpated Claims and (ii), unless supported by a written guarantee (or similar document), to seek to enforce their Claims against the Interest Holders, whether pursuant to an "alter ego" claim, a claim for "piercing" the Debtors' or the Reorganized Debtors' corporate existence, or other similar Claim.

19

5.5 **SUBORDINATED CLAIMS** Pursuant to section 510 of the Bankruptcy Code, the Reorganized Debtors reserve the right to re-classify (or request that the Bankruptcy Court reclassify any Allowed Claim or Allowed Interest in accordance with any contractual, legal, or equitable subordination relating thereto.

5.6 **INJUNCTION** Except as provided in the Plan or the Confirmation Order, as of the Confirmation Date, all entities that have held, currently hold, or may hold Claims that have been discharged or terminated pursuant to the terms of the Plan (or will be discharged upon completion of payments under this Plan), are permanently enjoined from taking any of the following actions against the Debtors and the Reorganized Debtors (or their Property) on account of any such discharged Claims, debts, liabilities, or terminated rights: (i) commencing or continuing, in any manner or in any place, any action or other proceeding; (ii) enforcing, attaching, collecting or recovering in any manner any judgment, award, decree, or order; (iii) creating, perfecting, or enforcing any Lien or encumbrance; (iv) asserting a setoff, right of subrogation or recoupment of any kind against any debt, liability, or obligation due to the Debtors; and (v) commencing or continuing any action in any manner, in any place that does not comply, or is consistent, with the provisions of this Plan.

5.7 **PROTECTIONS AGAINST DISCRIMINATORY TREATMENT** Consistent with section 525 of the Bankruptcy Code and the Supremacy Clause of the United States Constitution, all Persons, including Governmental Units, shall not discriminate against the Reorganized Debtors or deny, revoke, suspend, or refuse to renew a license, permit, charter, franchise, or other similar grant to, condition such a grant to, discriminate with respect to such a grant against, the Reorganized Debtors or other Person with whom such Reorganized Debtors have been associated, solely because the Debtors have been a Debtor under chapter 11 of the Bankruptcy Code, have been insolvent before the commencement of the Chapter 11 Case (or during the Chapter 11 Case but before the Debtors are granted or denied a discharge), or has not paid a debt that is dischargeable in the Chapter 11 Case.

5.8 **POST-EFFECTIVE DATE OPERATIONS** On or after the Effective Date, the Reorganized Debtors shall operate in the ordinary course under the terms of this Plan and applicable nonbankrptcy law. The rules, restrictions, reports and other requirements of the Bankruptcy Code, Bankruptcy Rules and orders entered by the Bankruptcy Court shall continue to apply pending entry of a Final Decree only to the extent that such rules, restrictions, reports and other requirements expressly apply, by their terms, after confirmation and the occurrence of the Effective Date.

5.9 **SETOFFS** Except as otherwise expressly provided for in the Plan, the Reorganized Debtors pursuant to the Bankruptcy Code (including section 553 of the Bankruptcy Code), applicable non-bankruptcy law, or as may be agreed by the holder of a Claim, may setoff against any Allowed Claim and the distributions to be made pursuant to the Plan on account of such Allowed Claim (before any distribution is made on account such Allowed Claim), any claims, rights, and Causes of Action of any nature that such Debtors or Reorganized Debtors, as applicable, may hold against the Holder of such Allowed Claim (or against the predecessor in interest to holder to the extent that the holder takes such Allowed Claim subject to setoffs and defenses that may be asserted against the predecessor in interest), to the extent such claims, rights, or Causes of Action against such holder have not been otherwise compromised or settled on or prior to the Effective Date (whether pursuant to the Plan or otherwise); provided, however, that neither the failure to effect such a setoff nor the allowance of any Claim pursuant to the Plan

shall constitute a waiver or release by the Reorganized Debtors of any claims, rights, setoff rights and Causes of Action that such Reorganized Debtors may possess against such Holder. The Reorganized Debtors shall not be required to make any distributions to the holder of any Allowed Claim to the extent that the Reorganized Debtors asserts setoff rights against such holder until after entry of a Final Order resolving such setoff rights. In no event shall any holder of Claims be entitled to setoff any Claim against any claim, right, or Cause of Action of the Debtors or Reorganized Debtors unless such holder has filed a motion with the Bankruptcy Court requesting the authority to perform such setoff on or before the Confirmation Date, and notwithstanding any indication in any Proof of Claim or otherwise that such holder asserts, has, or intends to preserve any right of setoff pursuant to section 553 of the Bankruptcy Code or otherwise.

     5.10 **RECOUPMENT** In no event shall any holder of a claim or interest be entitled to recoup any Claim or interest against any claim, right, and/or Cause of Action of the Debtors or the Reorganized Debtors, as applicable, unless such Holder actually has performed such recoupment and provided notice thereof in writing to the Debtors on or before the Confirmation Date, notwithstanding any indication in any Proof of Claim or otherwise that such holder asserts, has, or intends to preserve any right of recoupment.

     5.11 **RELEASE OF LIENS** Except as otherwise provided in the Plan or in any contract, instrument, release, or other agreement or document created pursuant to the Plan, on the Effective Date and concurrently with the applicable distributions made pursuant to Articles II and III of the Plan, all mortgages, deeds of trust, Liens, pledges, or other security interests against any property of the Estate shall be fully released and discharged, and all of the right, title, and interest of any Holder of such mortgages, deeds of trust, Liens, pledges, or other security interests shall revert to the Reorganized Debtors and its successors and assigns.

**ARTICLE VI**

**MODIFICATION OF THE PLAN**

     6.1 **AMENDMENTS TO PLAN** Debtors may, from time to time, propose amendments or modifications of this Plan prior to its confirmation, without leave of the Court. After Confirmation, the Reorganized Debtors may, with leave of the Bankruptcy Court, and upon notice and opportunity for hearing to the affected Creditor(s) only, remedy any defect or omission, reconcile any inconsistencies in the Plan or in the Confirmation Order or otherwise modify the Plan.

     6.2 **REVOCATION OR WITHDRAWAL OF THE PLAN** The Debtors reserve the right to revoke or withdraw the Plan prior to the Confirmation Date and to file subsequent Chapter 11 plans. If the Debtors revoke or withdraw the Plan, or if confirmation does not occur, then: (l) the Plan shall be null and void in all respects; (2) any settlement or compromise embodied in the Plan (including the fixing or limiting to an amount certain of any Claim or Interest or Class of Claims or Interests), assumption, assignment, or rejection of executory contracts or unexpired leases effected by the Plan, and any document or agreement executed pursuant to the Plan, shall be deemed null and void; and (3) nothing contained in the Plan shall: (i) constitute a waiver or release of any Claims, Interests, or Causes of Action; (ii) prejudice in

21

any manner the rights of such Debtors or any other Person; or (iii) constitute an admission, acknowledgement, offer, or undertaking of any sort by such Debtors or any other Person.

# ARTICLE VII

## JURISDICTION OF THE COURT

7.1    This Court shall retain jurisdiction in this matter until the Plan has been fully consummated including, but not limited to, the following reasons and purposes:

A. The classification of the Claim of any Creditor, including, without limitation, assessment of Claims under Section 506 of the Bankruptcy Code, and the re-examination of Claims that have been allowed for purposes of voting, and the determination of such objections as may be filed to Claims of Creditors. The failure by the Debtors or the Reorganized Debtors to object to, or to examine, any Claim for the purposes of voting, shall not be deemed to be a waiver of any right to object to, or reexamine, the Claim in whole or in part. Furthermore, the fact that this Plan has provided a treatment for the benefit of a particular Creditor shall not in any way be deemed to be a waiver of any right to object to or re-examine the Claim or any secured interest whether by mortgage or otherwise which secures such Claim, in whole or in part.

B. The determination of all questions and disputes regarding title to the assets of the Estate, and all causes of action, controversies, disputes, or conflicts, whether or not subject to action pending as of the Confirmation Date, between the Debtors or the Reorganized Debtors or any other party.

C. The correction of any defect, the curing of any omission or the reconciliation of any inconsistency in this Plan or the Confirmation Order as may be necessary to carry out the purposes and intent of this Plan.

D. The modification of this Plan after confirmation pursuant to the Bankruptcy Rules and the Bankruptcy Code and as provided as in this Plan.

E. The enforcement and interpretation of the terms and conditions of this Plan and the entry of orders in aid of confirmation of this Plan.

F. The entry of any order, including injunctions, necessary to enforce the title, rights, and powers of Debtors, the Reorganized Debtors or any party-in-interest, and to impose such limitations, restrictions, terms and conditions of such title, rights and powers as this Court may deem necessary, to accomplish its obligations under the Plan.

G. The review and approval of all Professional Fee applications for services rendered prior to the Effective Date and the review of any Professional Fees for services rendered in connection with the Plan after the Effective Date, to the extent that the Debtors or the Reorganized Debtors dispute all or a portion thereof.

H. The assumption or rejection of executory contracts under of Plan.

I. The litigation of any Avoidance Actions.

22

J. The entry of an order determining the extent and/or validity of any Lien.

K. The entry of an order concluding and terminating this Chapter 11 Case.

# ARTICLE VIII

## TITLE TO PROPERTY

8.1 **VESTING OF PROPERTY** Except as provided in the Plan, title to any property of the Debtors (including all Causes of Action and Avoidance Actions) shall vest in the Reorganized Debtors upon the Effective Date of the Plan. The Reorganized Debtors shall be discharged from their status as debtors in possession. As of and following the Effective Date, the Reorganized Debtors may operate, use, acquire, and dispose of property and settle and compromise Claims or Interests without the supervision of the Bankruptcy Court, free of any restrictions of the Bankruptcy Code or Bankruptcy Rules, other than those restrictions expressly imposed by this Plan and the Confirmation Order.

# ARTICLE IX

## UNITED STATES TRUSTEE FEES

9.1 **U.S. TRUSTEE FEES** The Reorganized Debtors shall pay to the United States Trustee the appropriate sums required pursuant to 28 US.C. § 1930(a)(6) and shall provide the relevant information as required by the Office of the United States Trustee until the Chapter 11 Case is administratively closed.

# ARTICLE X

## EXECUTORY CONTRACTS

10.1 **REJECTION OF EXECUTORY CONTRACTS** Upon the occurrence of the Effective Date, all executory contracts shall be rejected. The Debtors may file one or more omnibus motions to assume executory contracts prior to the Effective Date and no executory contract listed in such omnibus motion shall be rejected under this Section unless the contract is subsequently withdrawn by the Debtors or the motion to assume is denied as to such contract by a Final Order of the Bankruptcy Court.

10.2 **ASSUMPTION OF UNEXPIRED LEASES** Debtors have the following unexpired leases as the landlord. The Debtors shall remain the landlord, subject to the lease.

- Gary Ward lease of 513 E University
-Jennifer McConnaughy lease of 3324 Valley Rise
-Laura Vaughn lease of 793 Walton
-Leonard Lopez lease of 777 Walton
-Tim Gallero lease of 785 Walton
-Tynesha Knowles lease of 767 E. Walton

23

All other executory contracts and unexpired leases, not assumed, are hereby rejected.

10.3 **ASSUMPTION AND CURE PAYMENTS** All assumed contracts and leases shall be cured by the Reorganized Debtors pursuant to Section 10.4, unless other provisions have been agreed to by the counter-party. As long as the Reorganized Debtors comply with this provision, all contract and lease counterparties must fulfill all contract and lease obligations and are enjoined from declaring a default for non-performance due to the bankruptcy or pre-assumption default.

10.4 **RESOLUTION OF CURE CLAIM DISPUTES** For each executory contract or unexpired lease to be assumed under this Article, within thirty (30) days after the Confirmation Date, the Debtors or Reorganized Debtors shall deliver a written proposal to the contract counter-party describing the method, timing and amount of any proposed Cure. The Reorganized Debtors' proposal shall be binding unless the contract counter-party delivers to the Reorganized Debtors' counsel, within fifteen (15) days after receipt of the proposal, a written objection detailing all reasons for the counter-party's objection and setting forth a counter-proposal. In the event that the dispute cannot be resolved, either party may petition the Bankruptcy Court to resolve the dispute through filing of a properly noticed motion. In the event that the Bankruptcy Court sets a Cure amount greater than the Cure amount proposed by the Debtors, the Debtors shall have ten (10) Business Days to Cure or reject the contact or lease.

10.5 **PRELIMINARY ASSUMPTION PENDING CHALLENGES** The assumption of a contract or lease under this Article does not prejudice the Debtors' right to challenge whether any contract or lease is an executory contract or unexpired lease, as opposed to a disguised security agreement. If the Debtors or Reorganized Debtors challenge an assumed contract or lease, the Reorganized Debtors shall not be required to comply with the disputed portions of the contract or lease until a Final Order is entered resolving the dispute. If the dispute is not resolved in the Reorganized Debtors' favor, the Reorganized Debtors had the right to reject the contract or lease for a period of ten (l0) days after entry of a Final Order.

## ARTICLE XI

## OBJECTIONS TO CLAIMS

11.1. **TIMING OF OBJECTIONS** The Debtors or Reorganized Debtors may object to the allowance and priority of any Claim, or the extent, validity and enforcement of any security interest, whether listed on the schedules filed by Debtors or filed by any Creditor, on or before the later of (a) sixty (60) days from the date of filing of any Proof of Claim or (b) eight (8) months after the Effective Date. The Reorganized Debtors may petition the Bankruptcy Court for an extension of this time by filing an appropriate motion. The service of the motion through the Court's electronic court filing system shall be sufficient notice of any such request. Any Claim not the subject of a timely objection shall be an Allowed Claim.

11.2 **EXTENT OF OBJECTIONS** As part of the objection process set forth in Section 11.1 above, and without limiting same, the Debtors or Reorganized Debtors shall have the right to object to the any Lien assessed against property of the Debtors.

11.4 **CLAIMS BAR DATE** Except as provided herein or otherwise agreed, any and all

Proofs of Claim filed after the applicable Bar Date shall be deemed disallowed and expunged as of the Effective Date without any further notice to or action, order, or approval of the Bankruptcy Court, and Holders of such Claims may not receive any distributions on account of such Claims, unless on or before the Confirmation Date such late Claim has been deemed timely Filed by a Final Order.

## ARTICLE XII

## PROVISIONS GOVERNING DISTRIBUTION

12.1 **DISPUTED PAYMENTS** Notwithstanding anything in this Plan to the contrary, the Debtors or Reorganized Debtors shall not be obligated to make any payments towards the Disputed portion of any Disputed Claim. The Reorganized Debtors shall withhold any such payments, and, if the dispute is resolved in favor of the Claim Holder, the Reorganized Debtors shall make any missed distributions within fourteen (14) days after entry of a Final Order determining the Claim.

12.2 **EFFECT OF ASSUMPTION AND CURE** These distribution procedures shall not apply to any Claim resulting from an executory contract or unexpired lease assumed by the Debtors. The Cure provisions of Article X and any agreement with the counter-party shall exclusively apply to distributions on such Claims.

12.3 **DELIVERY OF DISTRIBUTIONS IN GENERAL** Except as otherwise provided in the Plan, and notwithstanding any authority to the contrary, distributions to Holders of Allowed Claims and Allowed Interests shall be made by the Reorganized Debtors, in order of preference, (a) at the addresses set forth in any written notices of address changes delivered to the Reorganized Debtors after the date of any related Proof of Claim, (b) at the addresses set forth on the Proofs of Claim Filed by such Holders of Claims, (c) at the addresses reflected in the Schedules if no Proof of Claim has been Filed and the Reorganized Debtors has not received a written notice of a change of address, or (d) on any counsel that has appeared in the Chapter 11 Case on the Holder's behalf. Except as set forth herein, distributions under the Plan on account of Allowed Claims shall not be subject to levy, garnishment, attachment, or like legal process, so that each Holder of an Allowed Claim shall have and receive the benefit of the distributions in the manner set forth in the Plan. The Reorganized Debtors shall not incur any liability whatsoever on account of any distributions under the Plan except for gross negligence or willful misconduct.

12.4 **ALLOCATION OF PAYMENTS** All distributions shall be allocated first to principle until the principle amount of the Claim is paid in full, next to interest if interest is Allowed in relation to the Claim and finally, to fees, costs and expenses if such are Allowed.

12.5 **COMPLIANCE WITH TAX REQUIREMENTS AND ALLOCATIONS** In connection with the Plan, to the extent applicable, the Reorganized Debtors shall be authorized to take all actions necessary or appropriate actions to comply with all tax withholding and reporting requirements imposed on them by any Governmental Unit, including liquidating a portion of the distribution to be made under the Plan to generate sufficient funds to pay applicable withholding taxes, withholding distributions pending receipt of information necessary to facilitate such distributions, or establishing any other mechanisms they believe are reasonable and appropriate. The Reorganized Debtors reserve the right, in their sole discretion, to allocate all distributions

25

made under the Plan in compliance with all applicable wage garnishments, alimony, child support, other spousal awards, Liens, and encumbrances.

12.6 **UNDELIVERABLE DISTRIBUTIONS AND NON-NEGOTIATED CHECKS** If any distribution to a Holder of a Claim is returned as undeliverable, no further distributions to such Holder of such Claim shall be made unless and until the Reorganized Debtors is notified of the then-current address of such Holder of the Claim, after which time future distributions shall be made to such Holder of the Claim without interest at such address. If checks issued by the Reorganized Debtors on account of Claims are not negotiated within one hundred and twenty (120) days after the issuance of such check, the check shall be null and void. Amounts in respect to undeliverable distributions and non-negotiated checks shall be held by the Reorganized Debtor until (i) such distributions are claimed or (ii) ninety (90) days after the check is returned or voided for due to non-negotiation, after which date all such undistributed and non-negotiated amounts shall revert to the Reorganized Debtors free of any restrictions thereon and the Claim of any Holder or successor to such Holder with respect to such distribution shall be discharged and forever barred, notwithstanding federal or state escheat laws to the contrary. Nothing contained herein shall require the Reorganized Debtors to attempt to locate any Holder of an Allowed Claim.

12.7 **FRACTIONAL PAYMENTS** Notwithstanding any other provision of the Plan to the contrary, payments of fractions of dollars shall not be required. Payment of fractions of dollars that would otherwise be distributed under the Plan shall be rounded to the lower whole number of dollars.

### ARTICLE XIII

### MISCELLANEOUS PROVISIONS

13.1 **RELEASE OF LIENS** The Debtors, Reorganized Debtors, and all parties-in-interest, including without limitation any Creditor, shall be required to execute any document reasonably requested by the other to memorialize and effectuate the terms and conditions of this Plan. This shall include without limitation any execution by the Debtors or Reorganized Debtors of UCC financing statements and the execution by Creditors of any UCC or mortgage discharges, releases or terminations.

13.2 **SETOFFS AND COUNTERCLAIMS** No Creditor (including without limitation a Person or entity that becomes a Creditor as a result of a rejection of a contract) shall be allowed to setoff a Claim against an obligation to the Debtors or Reorganized Debtors arising in connection with a different contract. Unless expressly asserted in the Chapter 11 Case through the filing of a Proof of Claim, all setoffs and counterclaims are waived pursuant to this Plan. The Terms of this paragraph shall not apply to any taxing authority.

13.3 **COMPROMISE OF LITIGATION** The Reorganized Debtors shall have the right to commence, continue, amend or compromise all causes of action (including without limitation any Avoidance Action and any action described in the Debtors' Disclosure Statement) available to the Debtors, the Estate, the Debtors in Possession, or the Reorganized Debtors, whether or not those Causes of Action were the subject of a suit as of the Confirmation Date.

13.4 **NOTICES** Any notice to the Debtors or Reorganized Debtors required under this

Plan shall be addressed to the respective Debtors and delivered by (i) U.S. certified mail, return receipt requested, (ii) reputable overnight courier service with tracking, or (iii) hand-delivery:

Counsel for the Reorganized Debtor:
Stevenson & Bullock, P.L.C.,
Attn: Ernest M. Hassan
26100 American Drive., Suite 500
Southfield, MI 48034
ehassan@sbplclaw.com

Reorganized Debtor:

Patrick William McLeod
Josephine Ann McLeod
280 Golfside Dr.
Oxford, MI 48371

Failure to comply with this Section 13.4 shall render any notice to the Debtors to be invalid for purposes of this Plan.

13.5 **SUCCESSORS AND ASSIGNS** This Plan and the Confirmation Order shall inure to the benefit of, and be binding upon, all parties-in-interest and their respective successors and assigns.

Dated: June 10, 2013

/s/ Patrick William McLeod

and

/s/ Josephine Ann McLeod

27

# UNITED STATES BANKRUPTCY COURT
## FOR THE EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION – DETROIT

In the Matter of:

Patrick William McLeod
Josephine Ann McLeod,

      Debtors.

_____/

Bankruptcy Case No. 12-66747
Honorable Marci B McIvor
Chapter 11


## DISCLOSURE STATEMENT OF PATRICK WILLIAM MCLEOD AND JOSEPHINE ANN MCLEOD UNDER CHAPTER 11 OF THE BANRKUTPCY CODE


Prepared By:

STEVENSON & BULLOCK, P.L.C.
Ernest M. Hassan, III (P67815)
Attorneys for Patrick and Josephine McLeod
26100 American Drive, Suite 500
Southfield, MI 48034
Telephone: (248) 354-7906
Facsimile: (248) 354-7907

28

# I.    INTRODUCTION AND OVERVIEW

A. Purpose of Disclosure Statement.

All capitalized terms unless defined in this Disclosure Statement shall have the meaning ascribed to them in the Debtors' Plan of Reorganization (the "Plan"), unless the context indicates a different meaning.

Debtors submit this Disclosure Statement (the "Disclosure Statement") pursuant to §1125 of the Bankruptcy Code, 11 U.S.C. §§101 et seq., to all known holders of a Claim against them. Debtors have filed a Plan with the United States Bankruptcy Court for the Eastern District of Michigan, Southern Division - Detroit, a copy of which accompanies this Disclosure Statement.

Debtors provide this Disclosure Statement to its Creditors to disclose information material and necessary for Creditors to make a reasonably informed decision in exercising their right to vote for the acceptance of the Plan. The Debtors believe that acceptance of the Plan is in the best interest of all holders of claims against them.

B. Source of Information.

The Disclosure Statement and the Plan have been prepared from information furnished primarily by Debtors. Debtors' counsel has not conducted an independent investigation to verify such information.

Certain materials contained in this Disclosure Statement are taken directly from other readily accessible documents or are summaries of other documents. While every effort has been made to retain the meaning of such documents or portions of documents that have been summarized, the Debtors urge that any reliance on the contents of such documents be dependent upon a thorough review of the documents themselves. In the event of a discrepancy between this Disclosure Statement and the actual terms of a document, the actual terms of such document shall govern and apply.

The statements contained in this Disclosure Statement are made as of the date hereof, unless another time is specified. Neither the delivery of this Disclosure Statement nor any exchange of rights made in connection with it shall, under any circumstances, create an implication that there has been no change of the facts set forth herein since the date of this Disclosure Statement.

NO PERSON OR ENTITY HAS BEEN AUTHORIZED BY DEBTORS OR THE COURT TO GIVE ANY INSTRUCTIONS OR MAKE ANY REPRESENTATIONS CONCERNING DEBTORS, ITS FINANCIAL AFFAIRS, OR THE VALUE OF ITS PROPERTY, OTHER THAN AS SET FORTH IN THIS DISCLOSURE STATEMENT. ANY REPRESENTATIONS, PROMISES OR INDUCEMENTS, PARTICULARLY REGARDING DEBTORS' PROPERTY OR FUTURE INCOME, MADE TO SECURE YOUR ACCEPTANCE OR REJECTION OF THE PLAN, WHICH ARE OTHER THAN AS CONTAINED IN THIS DISCLOSURE STATEMENT, SHOULD NOT BE RELIED UPON BY YOU IN ARRIVING AT YOUR DECISION. SUCH REPRESENTATION,

29

**INDUCEMENTS AND/OR PROMISES, IF ANY, SHOULD BE REPORTED TO COUNSEL FOR DEBTORS WHO, IN TURN, SHALL DELIVER SUCH INFORMATION FOR SUCH ACTION AS THE COURT MAY DEEM APPROPRIATE.**

C. Overview of Chapter 11.

Chapter 11 is a fundamental reorganization chapter of the Bankruptcy Code. Under Chapter 11, a debtor is authorized to reorganize its business for the benefit of itself, its creditors and equity interest holders. In addition to permitting a rehabilitation of a debtor, another goal of Chapter 11 is to promote equality of treatment for similarly situated creditors and similarly situated equity interest holders with respect to the distribution of a debtor's assets.

The commencement of a Chapter 11 case creates an estate that is comprised of all of the legal and equitable interests of the debtor as of the filing date. The Bankruptcy Code provides that a debtor may continue to operate its business and remain in possession of its property as a debtor in possession. The consummation of a plan of reorganization is the principal objective in a Chapter 11 reorganization case. A plan of reorganization sets forth the means for satisfying claims against and interests in a debtor. Confirmation of a plan of reorganization by the Bankruptcy Court makes the plan binding upon a debtor, any issuer of securities under the plan, any person acquiring property under the plan and any creditor or equity interest holder of a debtor. Subject to certain limited exceptions, the confirmation order discharges a debtor from any debt that arose prior to the date of confirmation of the plan and substitutes the obligations specified under the confirmed plan.

After a plan of reorganization has been filed, the holders of claims against or interests in a debtor are permitted to vote to accept or reject the plan. Before soliciting acceptances of the proposed plan, however, § 1125 of the Bankruptcy Code requires a debtor to prepare a disclosure statement containing adequate information of a kind, and in sufficient detail, to enable a hypothetical reasonable investor to make an informed judgment about the plan.

The Debtors are submitting this Disclosure Statement to holders of Claims against, and Equity Interests in, the Debtors satisfy requirements of § 1125 of the Bankruptcy Code.

## II.   HISTORY AND DESCRIPTION OF DEBTORS

A. Description of Debtors, Compensation/Income and Post-Confirmation Income

On December 10, 2012 Patrick William McLeod and Josephine Ann McLeod ("Debtors") filed a Petition under Chapter 11 of the United States Bankruptcy Code ("Bankruptcy Code" or "Code") in the United States Bankruptcy Court for the Eastern District of Michigan, Southern Division ("Court"), Bankruptcy Case No. 12-66747. The Debtors are both individual debtors under Chapter 11 Bankruptcy Code. The case was assigned to the Honorable Marci B. McIvor.

The Debtors are a married couple. The income into the household is earned through employment of Mr. McLeod and ownership of seven rental homes. Mr. Mcleod is a web mortgage banking team leader for Quicken Loans. He has a net monthly income of $9,100.00. The monthly income from the operation of the rental properties is approximately $6,133.00. In

30

addition to Mr. McLeod's monthly net income from employment and income from the rental properties, the Debtors also have annual tax returns of approximately $5,000.00 which provides additional income of $500.00 per month pro rata to the household.

Upon filing the Petition, Patrick William McLoed and Josephine Ann McLeod became "debtors in possession" as that term is defined in the Code. Debtors are represented by Ernest M. Hassan, III and the firm of Stevenson & Bullock, P.L.C.

Debtors' Case has not had an appointment of an Official Unsecured Creditor's Committee.

B.    Nature of Case and Events Leading to Chapter 11 Filing

Prior to the Petition Date, Mr. McLeod acquired seven rental properties ("collectively the Properties") at various times and through various lenders in order to help supplement his income and for retirement purposes. Mr. McLeod was unable to sustain cash flow for these Properties due to the economic downturn in the Michigan economy and the extreme decrease of real property values. The fair market rental rate for the Properties was lower then the mortgage payments owed on the Properties. These cash flow issues caused the inability for Mr. McLeod to maintain the monthly mortgage payments for the Properties. Unfortunately, the past-due mortgage obligations caused legal proceedings to be commenced by some of the mortgage companies, which led to the filing of this bankruptcy case.

C. Insider Transactions

Debtors do not believe there are any material insider transactions.

## III.    POST-PETITION EVENTS OF SIGNIFICANCE

Since the filing of the Chapter 11 Petition the following events and matters have occurred: (1) the employment of Ernest M. Hassan, III and the firm Stevenson & Bullock, P.L.C. was obtained by the Court; (2) Order Establishing Deadlines and Procedures; (3) Entry of Default Judgment against Alliance Catholic Credit Union stripping their second mortgage from Debtors' residence; and (4) Order Granting Debtors' Motion to Extend Deadline to File a Combined Plan and Disclosure Statement and for Extension of Solicitation Period.

A. Transfers Post-Petition

There have been no post-petition transfers since the filing of the Petition (outside of the ordinary course of financial affairs).

B. Adequate Protection or Regular Monthly Payments

-Creditor Ford Motor Credit Company, LLC received adequate protection payments in the amount of $590.03 per month for a 2009 Ford F150.

-Creditor Federal National Mortgage Association ("Fannie Mae"), creditor c/o Seterus, Inc. received adequate protection in the amount of $300.00 per month beginning May 1, 2013 for the real property located at 513 East University Drive Unit 56, Rochester, MI 48307.

31

-Creditor Provident Funding Associates, LP received adequate protection in the amount of $233.28 per month for the real property located at 777 E. Walton Blvd., Pontiac, MI 48340.

## C. Cash Collateral or Financing Orders

There was no cash collateral or other financing orders in this case.

## D. Litigation

There is currently a Hearing on the Motion for Relief from Stay and Waiving FRBP 4001 (a)(3) filed by Creditor HSBC Bank USA, Nation Association to be held on June 18, 2013 at 10:30 a.m. There is no other litigation pending before this Court.

Upon the Effective Date, the Reorganized Debtors shall have standing to pursue any and all Causes of Action and Avoidance Actions. Debtors believe that the value of any Causes of Action and Avoidance Actions are insignificant. Potential Avoidance Actions may include avoidance of pre-petition payments to Insiders within one (1) year of the Petition Date, avoidance of other pre-petition payments within ninety (90) days of the Petition Date, avoidance or challenge to any Liens asserted against property of the Debtors or the Reorganized Debtors, avoidance of any unauthorized payment made after the Petition Date, and avoidance of any fraudulent conveyance that may have been made within six (6) years of the Petition Date. Other Causes of Action preserved by this Plan include all accounts receivable, collection actions, contract claims, and commercial tort claims held by the Debtors. Potential defendants include all Persons that transact business with the Debtors and any Person listed in the Debtors' statements of financial affairs (available at the Bankruptcy Court or upon request to Debtor's counsel) as having received a payment within ninety (90) days of the Petition Date. All Causes of Action, including Avoidance Actions, are specifically reserved, whether or not specifically listed in the Plan or Disclosure Statement. The Debtors and Reorganized Debtors shall have full discretion to pursue, litigate, settle and/or abandon any Cause of Action or Avoidance Action. Unless any cause of action against a Person is expressly waived, released, compromised or settled in the Plan or a Final Order, the Reorganized Debtors specifically reserves all causes of action for later adjudication, and, therefore, no preclusion doctrine, res judicata, estoppel (judicial, equitable or otherwise) or laches shall apply to any of the causes of action upon, after or as a consequence of the confirmation of the Plan, entry of the Confirmation Order, the Effective Date or consummation of the Plan. Whether or not any Cause of Action is pursued or abandoned, the Debtors and Reorganized Debtors reserve their rights to use any Cause of Action defensively, including for the purposes of asserting a setoff or recoupment, or to object to all or part of any Claim pursuant to section 502(d) of the Bankruptcy Code or otherwise.

Debtors reserve the right to object to any claim filed in this case, and to raise any applicable counter-claim or cross-claim in relation thereto.

## E. Claims Objection

Except to the extent that a claim is already allowed pursuant to a final non-appealable order, the Debtors reserve the right to object to claims as subject to the Claims Objection Process

32

set forth in Article XI; therefore, even if a claim is allowed for voting purposes, one may not be entitled to a distribution if an objection to such claim is later upheld.

## IV. ASSETS AND LIABILITES

A. See **Exhibit A** attached hereto, the Debtors' Liquidation Analysis.

B. Risks, conditions and assumption regarding the stated values.

i. All values stated in the Liquidation Analysis for assets, liabilities, costs, expenses and potential recoveries or based on good faith estimates using information currently available to the Debtors. The estimates have not been subject to audit and the Debtors' assets have not been appraised. The estimates shall in no way be construed to constitute binding guaranties, representations or warranties and are subject to revision at any time.

ii. The values for the assets of Debtors are based upon reasonable estimates of the values, as carried on Debtors books and records. In establishing the values, Debtor has considered the size, age, physical condition and location of the assets, in addition to the need for certain additional capital requirements. In addition, Debtors have obtained appraisals for real property held by Debtors.

iii. Upon liquidation/ sale of assets, there will be significant penalties and adjustments. The amounts provided are conservative estimates, but the adjustments would likely be higher.

C. Identify all potential claims and causes of action, including claims against insiders and avoidance actions.

i. The Debtors are not aware of any significant Causes of Action.

D. List and describe the priority claims including anticipated administrative expense claims of all types.

i. Note that it is impossible to accurately estimate administrative expenses as of the date of this Disclosure Statement, as such estimate depends on various unknown factors including the total duration of the Chapter 11 Cases and the nature and extent of additional administrative expenses, including professional expenses. Further information on claims can be found by accessing the claims register on the Bankruptcy Court's website. Administrative expense claims for Professionals are subject to review and approval by the Bankruptcy Court.

ii. The anticipated priority claims including

| Category | Claimant | Estimated Claim Amount | Scheduled Treatment | Notes |
|---|---|---|---|---|
| Group 1-Administrative | United States Trustee fees | $1,950.00 | To be determined | |
| Group 1-Administrative | Stevenson & Bullock, P.L.C | $30,000.00 | To be determined | |

33

F. Information regarding any debt guaranteed by anyone or if anyone is liable with the debtor on any debt.

The Debtors are co-debtors on the below listed item. Peter Cariera and Thomas McLeod may be liable with respect to debt set forth below as guarantor or co-signer. The list below is for description purposes only and not an admission by Debtors or any other person. The Debtors reserve the right to contest the amount of any Secured or Unsecured Claim, and if applicable, any asserted interest or Lien, or the priority or extent thereof.

a.      Debtors' secured loan with Ally

Nature:      Vehicle Loan
Amount: Ally asserts a Claim against the Debtors in the amount of $17, 165.25 according to Ally's filed Proof of Claim.
Description of collateral securing Debt: 2010 Town & Country
Thomas McLeod is guarantor on this loan.

b.      Debtors' secured loan with Bank of America, N.A ("Bank of America")

Nature: Lien on 6152 Singletree Lane, Acme Township, MI
Amount: Bank of America asserts a Claim against the Debtors in the amount of $141,769.91 according to Bank of America's filed proof of claim.
Description of collateral securing Debt: 6152 Singletree Lane, Acme Township, MI.
Peter Cariera is guarantor on this loan.

C.      Debtors' secured loan with The Bank of New York Mellon fka the Bank of New York, successor Trustee to JPMorgan Chase Bank, N.A., as Trustee for the CSFB Mortgage Securities corp., Home Equity Mortgage Pass through Certificates, Series 2004 ("Mellon")

Nature: Lien on 6152 Singletree Lane, Acme Township, MI
Amount: Mellon asserts a Claim against the Debtors in the amount of $13,23.68 according to Mellon's filed proof of claim.
Description of collateral securing Debt: 6152 Singletree Lane, Acme Township, MI
Peter Cariera is guarantor on this loan.

## PLAN IMPLEMENTATION

A. Financial

Debtors have attached as **Exhibit B** hereto and incorporated herein financial reports for the post-Chapter 11 months ending December 31, 2012, January 31, 2013, February 29, 2013, March 31, 2013, and April 31, 2013 that have been filed with the Court and provided to the Office of the U.S. Trustee.

34

Debtors have also attached as **Exhibit C** hereto and incorporated herein statements of income for the pre-petition 2009, 2010, and 2011.

Debtors have also attached as **Exhibit D** hereto and incorporated herein financial forecasts for the period of January 1, 2014 to December 31, 2022 which encompasses the term of the Plan. Debtors have calculated the Chapter 11 Plan Projections using a monthly format. Based on this format the Debtors' Income Tax Refund, estimated to be $5,000.00, was divided into monthly income payments of $500.00 and the Debtors' seasonal income from the property located at 6152 Singletree Lane, Ace Township, MI, estimated to be $10,000.00 was divided into monthly income payments of $833.33.

The liquidation analysis set forth in **Exhibit A** and previously outlined in above, indicates that if Debtors' assets were liquidated today, there would be insufficient assets available to satisfy unsecured creditors.

B. Tax Ramifications

Debtors do not believe at this time that any tax consequences from the confirmation of this Plan will have an adverse impact upon the Estate. The federal income tax consequences of the Plan to Creditors will depend upon, among other things, the payments to be received, whether the creditor reports income using the accrual or cash method, and whether the Creditor has taken a bad-debt deduction with respect to its Claim.

The tax consequences to the Debtors and/or Creditor resulting from confirmation of the Plan may vary depending upon the Debtor's and/or Creditor's particular circumstances and tax status. Debtors recommend that creditors or holders of claims obtain independent tax counsel to advise them as to the tax consequences of the Plan.

## VI. LEGAL REQUIRMENTS, AS FOLLOWS:

A. Voting Procedures

Under the United States Bankruptcy Code, the only classes entitled to vote to accept or reject a plan are classes of claims, or equity interest, impaired under the Plan. Accordingly, classes of claims or interests that are not impaired are not entitled to vote on the Plan.

Creditors that hold claims in more than one impaired class are entitled to vote separately in each class. Such a creditor will receive a separate ballot for all of its claims in each class (in accordance with the records of the Clerk of the Court) and should complete and sign each ballot separately. A creditor who asserts a claim in more than one class and who has not been provided with sufficient ballots may photocopy the ballot received and file multiple ballots.

Votes on the Plan will be counted only with respect to claims: (a) that are listed on the Debtors' Schedules of Assets and Liabilities other than as disputed, contingent or unliquidated; or (b) for which a proof of claim was filed on or before the bar date set by the Court for the filing of proofs of claim (except for certain claims expressly excluded from that bar date or which are

35

allowed by Court order); however, any vote by a holder of a claim will not be counted if such claim has been disallowed or is the subject of an unresolved objection, absent an order of the Court allowing such claim for voting purposes pursuant to 11 U.S.C. §502 and F.R. Bankr. P. 3018.

Voting on the Plan by each holder of a claim or interest in an impaired class is important. Each holder of such a claim or interest should vote on the enclosed ballot either to accept or to reject the Plan, and then return the ballot by mail to the Debtors' attorney by the deadline established by the Court.

Any ballot that does not appropriately indicate acceptance or rejection of the Plan will not be counted.

A ballot that is not received by the deadline will not be counted.

If a ballot is damaged, lost or missing, a replacement ballot may be obtained by sending a written request to the Debtors' attorney.

B. Acceptance

The United States Bankruptcy Code defines acceptance of a Plan by an impaired class of claims as acceptance by the holders of at least two-thirds in dollar amount, and more than one-half in number, of the claims of that class that actually cast ballots. The United States Bankruptcy Code defines acceptance of a Plan by an impaired class of equity interests as acceptance by holders of at least two-thirds in number of the equity interests of that class that actually cast ballots. If no creditor or interest holder in an impaired class votes, then that class has accepted the Plan.

C. Confirmation

11 U.S.C. § 1129(a) establishes conditions for the confirmation of a Plan. These conditions are too numerous and detailed to be fully explained here. Parties are encouraged to seek independent legal counsel to answer any questions concerning the Chapter 11 process.

Among the several conditions for confirmation of a Plan under 11 U.S.C. § 1129(a) are these:

1. Each class of impaired creditors and interest must accept the Plan, as described in the Acceptance section above.

2. Either each holder of a claim or interest in a class must accept the Plan, or the Plan must provide at least as much value as would be received upon liquidation under Chapter 7 of the Code.

D. Modification

The Debtors reserve the right to modify or withdraw the plan at any time as set out in Article VI of the Plan.

E. Effect of Confirmation

If the Plan is confirmed by the Court:

1.    Its terms are binding on the Debtors, all Sreditors, shareholders and other parties in interest, regardless of whether they have accepted the Plan.

2.    Except as provided in the plan:

(a)   In the case of a corporation that is reorganizing and continuing business:

(1)   All claims and interests will be discharged.

(2)   Creditors and shareholders will be prohibited from asserting their claims against or interest in the debtor or its assets.

(b)   In the case of a corporation that is liquidating and not continuing its business:

(1)   Claims and interests will not be discharged.

(2)   Creditors and shareholders will not be prohibited from asserting their claims against or interest in the debtor or its assets.

(c)   In the case of an individual or husband and wife:

(1)   Claims will be discharged, except as provided in 11 U.S.C. §§ 523 and 727(a).

(2)   Creditors will be prohibited from asserting their claims except as to those debts which are not discharged or dischargeable under 11 U.S.C. §§ 523 and 727(a).

(c)   In the case of an individual or husband and wife:

(1)   Claims will be discharged, except as provided in 11 U.S.C. §§523 and 727(a).

(2)   Creditors will be prohibited from asserting their claims except as to those debts which are not discharged or dischargeable under 11 U.S.C. §§523 and 727(a).

37

This Plan is proposed in good faith and meets the requirements for confirmation pursuant to Section 1129 of the Bankruptcy Code. Debtors submit that this Plan is in the best interest of all Creditors. Accordingly, Debtors urge holders of impaired Claims to vote to accept this Plan and to evidence such acceptance by timely returning completed ballots.

| Proposed and Prepared By: | Prepared By: |
|---|---|
| Patrick William McLeod | STEVENSON & BULLOCK, P.L.C. |
| /s/ Patrick William McLeod<br>Debtor | /s/ Ernest M. Hassan, III<br>Ernest M. Hassan, III (P67815)<br>Counsel for Debtors |
| Josephine Ann McLeod | 26100 American Drive, Suite 500<br>Southfield, MI 48034 |
| /s/ Josephine Ann McLeod<br>Joint Debtor | (248) 354-7906<br>ehassan@sbplclaw.com |
| Dated: June 10, 2013 | Dated: June 10, 2013 |